# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

UNITED STATES             PLAINTIFF

v.             No. 5:23-cr-27-BJB

KYLE RATTA             DEFENDANT

\* \* \* \* \*

### ORDER DENYING MOTION TO AMEND SENTENCE

Kyle Ratta pled guilty to three federal child-pornography counts: possession, attempted receipt, and transfer of child pornography. Plea Agreement (DN 25). This Court sentenced him to 60 months of imprisonment for each count—with each prison term to run concurrently. Criminal Judgment (DN 36).

Ratta's federal sentence did not address any pending state charges. But a month after his sentencing hearing, he pled guilty in state court to several unrelated drug charges. *See* State Judgment (DN 45-3). The state court sentenced him to 18 months in state custody—to be served consecutive to his federal sentence. *Id.* Ratta then petitioned the state court for his sentence to run concurrently with his federal sentence, but the state court denied his request "unless ordered otherwise" by this Court. *See* Order (DN 45-1). Ratta now asks this Court for an order that his federal sentence run concurrently with his state sentence. DN 45.

Congress has supplied a rule to govern whether multiple federal prison sentences run consecutively or concurrently. "Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively." 18 U.S.C. § 3584(a). But "[m]ultiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." *Id.* In determining whether prison terms should run concurrently or consecutively, a sentencing judge must consider the same statutory factors under § 3553(a)—nature and seriousness of the offense, characteristics and history of the defendant, just punishment, respect for the law, deterrence, public protection, unwarranted disparities, and the like—that guide the rest of a sentencing decision. § 3584(b). That framework is simple enough when a judge is dealing with sentences for multiple federal offenses being sentenced simultaneously ("[m]ultiple terms of imprisonment imposed at the same time"). It

1

also accounts for existing-but-unserved sentences from other offenses: "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." § 3584(a).

The statute doesn't expressly address state sentences, though its language applies readily enough to an undischarged state sentence already imposed. Federal judges "have discretion to select whether the sentences they impose will run concurrently or consecutively with respect to other sentences that they impose, or that have been imposed in other proceedings, including state proceedings." *Setser v. United States*, 566 U.S. 231, 236 (2012). Section 3584 doesn't speak, at least not directly, to the federal sentencing judge's discretion to run a sentence concurrently or consecutively when an *anticipated* state sentence is on the horizon. But in that scenario, too, the Supreme Court has held that the federal sentencing judge maintains discretion to decide whether the federal sentence will be served consecutively or concurrently to the anticipated state sentence. *Id.* How is the judge to decide? By considering the same § 3553(a) factors that govern the rest of the sentencing decision. *Id.* at 240. And if a federal sentencing court is silent about a future sentence, *Setser* suggested that the statute's default rule applies: sentences imposed at different times run consecutively, while "multiple terms of imprisonment [imposed] at the same time" without a decision "address[ing] the concurrent-vs.-consecutive issue" 'run concurrently.'" *Id.* at 238 (quoting § 3584(a)); *but see* n.† below.

Once the judge imposes a sentence, responsibility for implementing it shifts to the Bureau of Prisons. *See* 18 U.S.C. § 3621. For example, the Bureau often implements a court's order that a federal sentence be served concurrently with a state one by "assign[ing] an inmate to serve his federal sentence in a state prison." *Dotson v. Kizziah*, 966 F.3d 443, 445 (6th Cir. 2020). That assignment authority is part of the Bureau's more general responsibility "to determine how long the District Court's sentence authorizes it to continue [a prisoner's] confinement." *Setser*, 566 U.S. at 244.†

---

† In *Setser*, the Government contended that "Section 3621(b) gives the Bureau the authority to order that a prisoner serve his federal sentence in any suitable prison facility 'whether maintained by the Federal Government or otherwise.' The Bureau may therefore order that a prisoner serve his federal sentence in a *state* prison. Thus, when a person subject to a federal sentence is serving a state sentence, the Bureau may designate the state prison as the place of imprisonment for the federal sentence—effectively making the two sentences concurrent—or decline to do so—effectively making them consecutive." *Setser*, 566 U.S. at 235. The Court rejected the Government's inference (also embraced by the dissent) that control over place of confinement displaced judicial control over consecutive-or-concurrent

The situation changes after entry of a final judgment, however. Once the federal sentencing court has imposed the sentence, it has no ongoing role in the implementation or execution of that confinement. To be sure, the Bureau must effectuate the federal judge's sentence with respect to concurrent or consecutive terms, and does not itself enjoy sentencing discretion. *Setser*, 566 U.S. at 239. But the law doesn't contain a judicial mechanism—short of compassionate release or habeas corpus—for a defendant or even the Bureau to return to the federal judge for an amended or elaborated sentence. *Id.* at 243–44. Federal law is clear that a "court may not modify a term of imprisonment once it has been imposed except" in limited, enumerated circumstances—none of which relate to a consecutive versus concurrent determination. 18 U.S.C. § 3582(c). *See United States v. Williams*, 607 F.3d 1123, 1125 (6th Cir. 2010) ("A district court may modify a defendant's sentence only as provided by statute.") (quotation marks omitted); *Fernandez v. United States*, 146 S. Ct. 1292, 1300 (2026) (discussing "tight procedural constraints" that limit collateral attacks on federal sentences). And "[f]ederal courts are courts of limited jurisdiction," wielding "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375, 377 (1994) (citations omitted). So the Court is powerless to grant the relief Ratta seeks—which would mean effectively overruling the state court's consecutive-sentencing determination by revising the previously imposed federal sentence.

To the extent Ratta instead seeks a non-binding *recommendation* to the Bureau of Prisons about whether his federal sentence should run concurrently, he is likewise out of luck. "A recommendation differs from a judgment, and under Article III that difference is fundamental." *United States v. McHugh*, 528 F.3d 538, 540 (7th Cir. 2008) (Easterbrook, J.). In general, federal courts may decide a "case or controversy," but may not issue non-binding recommendations—sometimes known as "advisory opinions." *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975); *see also McHugh*, 528 F.3d at 540 ("[T]he 'judicial Power of the United States' is a power to

---

sentencing, a quintessentially judicial determination. *Compare id.* at 235–36, *with id.* at 252–53 (Breyer, J., dissenting) ("The [BOP] in effect makes the consecutive/concurrent decision after considering, among other things, 'any statement by the court that imposed the sentence,' including statements 'concerning the purposes for which the sentence to imprisonment was determined to be warranted.'") (quoting § 3621(b)(4)(A)). Worth noting, however, is the similarity between the dissent's view of BOP discretion and the Sixth Circuit's unsigned order in *Dotson*: "Section 3621(b) authorizes the BOP to designate a federal prisoner's place of imprisonment. And so long as that decision does not conflict with either § 3584(a)'s default provision or a district court's explicit sentencing designation, the BOP's assignment will effectively resolve whether sentences are served concurrently or consecutively." 966 F.3d at 445 (citations omitted).

make binding decisions, not to make suggestions that the Executive Branch may accept or reject.") (citing *Hayburn's Case,* 2 Dall. 409 (1792)).

Federal sentencing law, to be sure, permits a sentencing court to "recommen[d] a type of penal or correctional facility as appropriate." 18 U.S.C. § 3621(b)(4)(B). Some courts have held that this sort of recommendation is a mere "suggestion" that "the Bureau is free to accept or reject," such that the recommendation does not even "exercise the judicial power." *McHugh*, 528 F.3d at 541. To the extent a recommendation made at sentencing *is* considered an exercise of Article III authority, it differs considerably from a post-sentencing recommendation. Not only does it carry a long historical pedigree, but it's made during and in connection with the judge's sentencing decision resolving a live case. *See, e.g.*, *Muskrat v. United States*, 219 U.S. 346, 356 (1911) (describing the "judicial power" "to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision") (quotation marks omitted).

Recommendations and admonitions about a defendant's service of his sentence also frequently and naturally appear as part of the articulated reasoning demanded by Congress and the Supreme Court from the sentencing judge. *See, e.g.*, *Rita v. United States*, 551 U.S. 338, 356 (2007) (The "sentencing judge, 'at the time of sentencing,' [must] 'state in open court the reasons for its imposition of the particular sentence.'") (quoting § 3553(c)). The judge's discussion of the sentencing factors made relevant by Congress expressly includes custodial considerations delegated to the Bureau in the first instance. *See* § 3553(a)(2)(D) (provision of "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). And other such factors (public protection, deterrence, "the kind of sentences available," and the like) naturally and regularly bear at least indirectly on defendant requests and judicial recommendations regarding matters that, following sentencing, undoubtedly lie within the purview of the executive rather than judicial branch. *See generally* § 3553(a). The wide-ranging nature of sentencing arguments, allocutions, and explanations is familiar and proper fare to any experienced judge, trial lawyer, and reviewing panel. And Congress has rejected any concern that such discussion may encroach on the prerogatives of a coordinate branch: although the sentencing statute requires the Bureau to "conside[r]" the Court's input, § 3621(b), judicial recommendations do not bind the Bureau. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) (A "court's recommendations [a]re only recommendations.").

Once a court sentences a federal offender, however, the Bureau wields exclusive authority to implement the statutory sentencing regime, including by designating "'the place of the prisoner's imprisonment,' § 3621(b), and the treatment

4

programs (if any) in which he may participate, §§ 3621(e), (f); § 3624(f)." *Id.* at 331. Congress expressly forbade continued judicial involvement by making that discretion unreviewable: "Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." § 3621(b).

Some courts, it is true, have seen fit to make non-binding recommendations after sentencing. In general, they've reasoned that the statute contains no express prohibition against the practice. *See generally Carter v. United States*, 2018 WL 2376513, at *2 (E.D. Wis. May 24, 2018) (Adelman, J.) (collecting cases going either direction). But that inference about trial judges' *post*-sentencing authority, is difficult to reconcile with both the statutory scheme and broader structural principles regarding the Constitution's separation of powers.

First, the supposed "absence" of a statutory prohibition is debatable at best. As noted above, Congress expressly rendered the "designation of a place of imprisonment … *not reviewable by any court.*"   § 3621(b)(5) (emphasis added). Meanwhile, no source of positive law or binding precedent appears to authorize such recommendations. Although some courts cite § 3621 or *Tapia* to support issuing these non-binding recommendations, they do not distinguish between the pre- and post-sentencing contexts. *See, e.g.*, *United States v. Buckley*, No. 2:13-cr-125, 2018 WL 6067437, at *1–2 (E.D. Cal. Nov. 20, 2018) (issuing recommendation that BOP place defendant in halfway house despite acknowledging that "recommendation has 'no binding effect' on the BOP to determine or change a prisoner's placement").

Second, the limited express authorization courts *do* enjoy to modify criminal sentences carries a negative inference against judicial extensions of those specified powers. Under Federal Criminal Rule 35(a), a "court may correct a sentence that resulted from arithmetical, technical, or other clear error" within 14 days. And the compassionate-release and habeas statutes carve narrow and detailed pathways to revisit a final criminal judgment. In general, and as explained above, courts "may not modify a term of imprisonment once it has been imposed" unless a defendant qualifies for compassionate release, 18 U.S.C. § 3582(c), or the sentence "was imposed in violation of the Constitution or laws of the United States," 28 U.S.C. § 2255(a). When statutory text doesn't expressly contemplate or foreclose a particular type of post-sentencing request, the law defaults against such authority. *See, e.g.*, *Kokkonen*, 511 U.S. at 377 (courts "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree") (citations omitted). This "structural inference" of our federal sentencing and post-conviction regimes rejects freewheeling judicial authority to amend sentences. *Fernandez*, 146 S. Ct. at 1304–07. "A prison sentence, once imposed, usually cannot be modified by the district

court." *Rutherford v. United States*, 146 S. Ct. 1320, 1326, 1331–34 (2026) (rejecting expansive reading of one of "several narrow exceptions" allowing for compassionate release).

This skeptical approach to statutory relief reflects even more deeply seated principles of constitutional avoidance and interpretation. By contrast with nonbinding statements and recommendations made during sentencing, any recommendations made after sentencing and final judgment enjoy no such long historical pedigree or sound theoretical justification. "Article III, § 2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies,'" which has "always" been "taken … to mean cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102 (1998). The judicial power is thus largely a "power to render judgments in individual cases." *Murphy v. N.C.A.A.*, 584 U.S. 453, 488 (2018) (Thomas, J., concurring); *see also* Fallon, et al., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM (7th ed., 2015), at 49–52 (describing Jay Court's famous rejection of invitation to offer advisory opinion on lawfulness of Washington's Neutrality Proclamation as inconsistent with "lines of separation drawn by the Constitution between the three departments of the government"). In contrast to the courts of their English predecessors, the framers established a judiciary whose "independence meant the ability to legally resolve cases, not merely to opine on them to the President." Baude, *The Judgment Power*, 96 GEO. L.J. 1807, 1816–17 (2008). "The province of the court is, solely, to decide on the rights of individuals, not to enquire how the executive, or executive officers, perform duties in which they have a discretion." *Marbury v. Madison*, 1 Cranch 137, 170 (1803). So from the founding onward, courts have recognized the chance to offer an advisory opinion as a forbidden temptation, albeit one not always faithfully resisted. That longstanding norm counsels against reading the federal sentencing laws to permit—much less encourage—trial judges to offer post-judgment recommendations at the request of the Executive Branch. *See, e.g.*, *United States v. Hansen*, 599 U.S. 762, 781 (2023) ("When legislation and the Constitution brush up against each other, our task is to seek harmony, not to manufacture conflict.").

That leaves the question of confinement to the Executive Branch to make in faithful application of the sentencing judge's order and Congress's scheme. Ratta remains free to ask the Bureau to designate state prison as the place of confinement for his federal sentence. *Setser*, 566 U.S. at 244 (referring to, *inter alia*, Bureau's Administrative Remedy Program). Here, the federal court's order spoke only to his multiple federal sentences, and (even on Ratta's telling) the state court ordered his

6

state sentence on apparently unrelated convictions to be served consecutively to his federal sentences.  How to execute those instructions remains, at least as a matter of federal law, a question for the Bureau to decide rather than for this Court to revisit.

Given that lack of judicial authority, the Court denies Ratta's motion (DN 45). The case remains closed.